IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          CASE NO. 15-09749 (ESL)

JANICE RODRIGUEZ NEGRON                          CHAPTER 13

    Debtor

IN RE:                                          CASE NO. 16-00699 (ESL)

AIDA MARTINEZ MEDINA                             CHAPTER 13

    Debtor

OPINION AND ORDER

These cases are before the court upon the Chapter 13 Trustee's (hereinafter referred to as "Trustee") challenge to the "Validity of Contract for Bankruptcy Assistance" pursuant to 11 U.S.C. §§526-528. The Trustee argues that the contract for bankruptcy assistance executed between the Debtors and their attorney are void for failure to comply with the material requirements of 11 U.S.C. §§526-528. The Trustee challenges the validity of the contract due to three principal arguments: (1) the contract does not clearly and conspicuously explain the services that the attorney will provide to the Debtors; (2) the contract does not clearly and conspicuously explain the fees or charges for the services to be provided by the attorney; and (3) the contract is open-ended and does not provide a cap on the cost of the services. Additionally, and exclusively as to case no. 16-00699, the Trustee specifically argues that Legal Partners delegates faculties of the attorneys to paralegal staff in violation of this court's determinations on In Re Pereira Santiago, 457 B.R. 172 (Bankr. D.P.R. 2011).

Debtors are represented by the debt relief agency ("DRA") Legal Partners P.S.C. ("Legal Partners") and through attorney Juan M. Súarez Cobo filed a reply arguing that the Trustee has no

1

right of action to pursue remedies for alleged violations of 11 U.S.C. §§526, 527 and 528. The DRA further alleges that the Trustee is using a "shotgun pleading", that the Trustee's arguments are focused to on Attorney Suarez Cobo personally, however, the Debtor contracted with Legal Partners, which is, actually, the debt relief agency in these cases. The DRA argues that there is no justiciable controversy as there is no claimant, no injury and no controversy as to the contract and that 11 U.S.C. §526(c)(1) grants unchallenged power to the assisted person to validate and enforce the contract even when it has been declared void. As to the specificity of the contract the DRA argues that it is not possible to suggest specific legal bankruptcy counseling and delineate specific services that will be provided, prior to performing a meaningful investigation and due diligence process under the circumstances of the case. Legal Partners further states that the references made to LBR 2016-1(f)(1) in the contract are "an explanation of the rule", however, the contract is clearly based in hourly billing and not ambiguous. The DRA additionally states that the "…United States Trustee's Guidelines for Reviewing Application for Compensation and Reimbursement of Expenses filed under 11 U.S.C. §330 (Appendix A to 28 C.F.R. §58) permits that change in hourly fees during the pendency of a case".

Legal Partners further argues against the Trustee's proposal of a "fee cap" and alleges that only a submissive approach in legal representation will allow the Debtor's attorney to maintain the legal representation under the cap, in the detriment of the Debtors.

As to the "use of paralegal" allegations, Legal Partners states that the arguments are hypothetical and not supported by any facts and therefore, will not engage in any explanation as to suppositions as to how the paralegals work or perform their duties.

The court will address these cases together considering that only the paralegal argument is exclusive to case no. 16-00699. As to the rest of the Trustee's argument and the DRA's reply the motions address similar positions, and therefore, will be addressed by the court jointly.

2

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(A). Venue is proper under 28 U.S.C. §§1408 and 1409.

Procedural History and Relevant Facts

Case No. 15-09749

The Debtor filed a chapter 13 bankruptcy petition on December 9, 2015 (Docket No. 1). The Disclosure of Compensation was filed by the Debtor's attorney on December 11, 2015 (Docket No. 9). The Debtor filed a chapter 13 plan on December 28, 2015 (Docket No. 19). On the *Report on Meeting of Creditors* the Trustee made the following remark: "Plan provides that fee are $3,000.00; however, 2016 statement establishes that fee will be paid by hourly rate. Debtor to clarify this discrepancy and also why the $87.00 should not be considered part of the no look fee, in case the attorney opts that option." (Docket No. 22) The Debtor filed an *Amended Disclosure of Compensation* and *Amended Plan dated 2/3/2016* On February 3, 2016 (Docket Nos. 24 and 25). On February 8, 2016, the Trustee filed his *Trustee's Report on Confirmation* and stated "[f]rom the amended Rule 2016 Disclosure of Compensation, it appears that debtors' counsel has agreed to be paid by application for compensation, not by the $3,000.00 flat fee. Considering the above, plan should include language that fees to be paid will be through an Application. Moreover, the application needs to be filed prior to the confirmation, as per the Opinion and Order of Honorable Judge Enrique S. Lamoutte in the case of In Re Medina Espinosa, Case 13-04255-ESL" (Docket No. 25). On June 7, 2016, the attorney for the Debtor filed an Application for Compensation for the period of 11/27/2015 to 6/6/2016 and the amount of $3,500.00 of which

3

$750.00 were paid pre-petition. (Docket No. 27). On June 13, 2016, the Trustee filed his T*rustee's Objection to Motion Requesting Interim Compensation, Doc. #27* (Docket No. 30). The Trustee alleged that: (1) the applicant did not provide any legal ground to sustain the request that the Trustee initiate disbursements before the confirmation of the plan; (2) the request that the chapter 13 estate remains open and preserved if the case is dismissed before plan confirmation to pay attorney's fees is not applicable and overly broad; (3) the present case is a simple chapter 13 case that should've been charged pursuant to the flat fee established in P.R. LBR 2016-1(f) and not an application for compensation. The Trustee further objected specific entries of the application for being vague or lacking specificity; for being clerical in nature or referring to the preparation of the application, amongst other, in the total amount of $673.75. On June 15, 2016, the Debtor's plan was confirmed, and the issue of allowance of fees was continued (Docket Nos. 31 and 32). During the hearing, the court expressed its concerns as to the practice of using the flat fee as a minimum fee and then choosing if the case was to be charged as a flat fee case or under the lodestar method (See hearing transcript at Docket No. 38). After several procedural matters, the parties' arguments were compiled in the *Trustee's Memorandum of Law on Nullity of Contract for Bankruptcy Assistance under 11 U.S.C. §§526-28* (Docket No. 95) and the Debtor's *Response to Trustee's Memorandum* (Docket No. 126).

Case No. 16-00699

The Debtor Aida Martinez Medina filed a chapter 13 bankruptcy petition on January 30, 2016 (Docket No. 1). On March 3, 3016, on its Report on Meeting of Creditors the Trustee stated the following as to the fee provisions on the plan:

"The 2016 Disclosure Statement is inconsistent with the plan provision regarding attorney's fee. While the 2016 Disclosure Statement states counsel for debtor has agreed to accept an hourly rate of $225.00, the plan provides that the fees to be paid to counsel are $3,000.00 of which $453.00 where paid pre-petition, leaving an outstanding balance of $2,547.00 to be paid through the plan. Moreover, the 2016 disclosure statement and the plan provision regarding attorney's fees do not comply with the regulatory regime of P.R. LBR 2016-1(f), which allow for a flat fee not to exceed $3,000.00. Counsel for debtor asserts in the 2016 disclosure statement an agreement with the debtor to charge attorney's fees on an hourly rate basis. Accordingly, counsel cannot claim a basic fee of $3,000.00 for legal fees akin to the flat fee. A flat fee does not vary with changes in conditions or in particular cases. If changes in conditions, such as amount of time spent on a case to obtain the confirmation of the plan, affect the amount of compensation, then by definition is not a flat fee. Local Bankruptcy Rule 2016-1(f) does not allow a combination between the flat fee and hourly rate. When services are provided on an hourly basis, the minimum charge counsel could make is determined on the number of hours spent in the representation of the debtor. If the hours spent in the representation do not reach $3,000.00 worth of services computed on an hourly basis, then counsel is not entitled to receive a basic fee of $3,000.00 only the actual fee earned. When the issues are not complex and the process is straight forward, an attorney is expected to exercise 'billing judgement', and is encouraged to reduce its customary fees in appropriate circumstances to reflect a less substantial expenditure of attorney time". In Re Lugo Parrilla, 530 B.R. 1 (Bankr. D PR 2015) citing In Re Thorn, 192 B.R. 52, 56 (Bankr. N. D. NY 1984).

On March 17, 2016, the Debtor filed an Amended Chapter 13 Plan and Amended Disclosure of Compensation 2016(b) (Docket Nos. 18 and 19). On March 21, 2016, the Trustee filed an Unfavorable Report, in which he objected paragraph 1(b)(iii) of the plan which stated: "[a] detailed application for fees and expenses will be filed within twenty one (21) days after the confirmation order is entered or as otherwise provided by the Court. The Debtors' attorney reserves the right to request leave to obtain compensation pursuant to Local Bankruptcy Rule (L.B.R.) 2016-1(f)" (Docket No. 25). The Trustee argued that: (1) reasonable compensation must be dealt with before the plan is confirmed; (2) an attorney must determine the fee arrangement by a written contract with the debtor. The attorney cannot retain the option of charging pursuant to LBR Rule 2016, as if $3,000.00 was a minimum fee, or by the loadstar method, at the discretion of the attorney. An *Application for Compensation* was filed by the Debtor's attorney on May 12, 2016,

requesting the amount of $3,350.00 of which $850.00 were paid pre-petition (Docket No. 35). On July 8, 2016, the Trustee filed his *Objection to Motion Requesting Interim Compensation, Doc. #35* (Docket No. 45). The Trustee alleged that: (1) the applicant did not provide any legal ground to sustain the request that the Trustee initiate disbursements before the confirmation of the plan; (2) the request that the chapter 13 estate remains open and preserved if the case is dismissed before plan confirmation to pay attorney's fees is not applicable and overly broad; (3) the present case is a simple chapter 13 case that should've been charged pursuant to the flat fee established in P.R. LBR 2016-1(f) and not an application for compensation. The Trustee further objected specific entries of the application for being vague or lacking specificity; for being unwarranted or unnecessary work, duplicative, amongst other, in the total amount of $1,042.50. After several procedural matters, the court confirmed the Debtor' plan on November 2, 2016 (Docket No. 77). However, the attorney's fees issue was left unaddressed by the court, pending the Trustee's memorandum. On January 11, 2017, the Trustee filed his *Memorandum of Law on Validity of Contract for Bankruptcy Assistance Under 11 U.S.C. §§526-28* (Docket No. 100). On March 24, 2018 the Debtor filed her *Response to Trustee's Memorandum* (Docket No. 143).

The Trustee's Position

On his Memorandum of Law, the Trustee addresses the same principal issues as to the validity of the service contracts. However, on case 16-00699, the Trustee argues that the provisions related to paralegal work contravene this court's previous decision in In Re Lugo Parrilla, as it impermissibly delegates attorneys' functions in paralegal staff. The court will discuss said argument independently.

The first argument of the Trustee is that the attorney charges for his services under the loadstar method at an hourly rate of $225.00, and simultaneously reserves the right to elect to

receive compensation pursuant to P.R. LBR 2016-1(f), which changes the nature of the flat fee into a minimum fee.

The second argument of the Trustee is that the contract is void as it does not comply with 11 U.S.C. §528(a)(1)(A) for not explaining clearly and conspicuously the services which will provided to the assisted person. The Trustee alleges that the contract deals exclusively with the duties and obligations of the Debtors but fails to explain the services that the attorney will provide to the Debtors or under which chapter the case will be filed. "A clear and conspicuous explanation in writing of the services to be provide by the attorney gives the debtor a defined reference of what to expect from her attorney, and a benchmark to evaluate the reasonableness of the fees charged for such services. Conversely, if the services to be provided are not clearly explained in the contract, debtor has no idea of what to expect from her attorney and has no point of reference to evaluate the reasonableness of the fees charged by the attorney." ¶77, case no. 15-09749; paragraph ¶33, case no. 16-00699. Additionally, the Trustee alleges that the automatic annual increase of the fees, without notice and within the range of $10.00 to $35.00, fails the clear and conspicuous requirement.

The Trustee further argues that the contract does not explains clearly and conspicuously the fees to be charged pursuant to 11 U.S.C. §528(a)(1)(B). As alleged by the Trustee, the contract provides two alternatives to collect fees: the contract states that the services will be charged by the hour, however the attorney may choose to receive the $3,000.00 flat fee allowed pursuant to P.R. L.B.R. 2016-1(f)(1). The Trustee argues that an attorney representing a debtor cannot have it both ways. If the flat fee is chosen by the attorney, the flat fee is the only form of compensation. The Trustee states that said position is the equivalent of treating the flat fee as a minimum fee. However, if the attorney chooses to charge by the hour, an application should be filed even if the reasonable attorney's fees are less than the flat fee, which the Trustee argues in these cases through

7

his objections to the applications for compensation filed by Legal Partners. Both applications of compensation where objected by the Trustee, who alleges that the compensation should be inferior to the no look fee.

The Trustee additionally argues that the contract allows the attorney to increase the fees by amending the plan without further notification to the Debtors. The Trustee states that in cases where the fees are paid through the Chapter 13 payment plan, full and accurate disclosure of the cost of the services is fundamental for the assisted person to evaluate the ability to comply with such payment plan. The Trustee argues Legal Partners is not committed to the $3,000.00 fee included in the payment and that it has broad authorization from the clients to amend the plan to cover additional fees unknown by the Debtors.

The Trustee further alleges that the debt relief agency has the duty to estimate the cost of the services and that said estimate should serve as a cap or limit. The Trustee argues that the debt relief agency, after conducting a reasonable inquiry of the economic circumstances of the assisted person, can determine the necessary services and if the 3,000.00 flat fee will suffice. The Trustee argues "[s]ection 528(a) proscribes open-ended limitless contracts for bankruptcy assistance, which do not have a cap or limit on the cost of the services, because the assisted is not informed what is the ultimate cost of the services." (¶ 94, case no. 15-09749; ¶72, case no. 16-00699). Therefore, the Trustee suggests that the when services are charged using the loadstar method the debt relief agency must provide in the contract an estimate that operates as a cap or limit on the cost of the services. The Trustee argues that the contracts for bankruptcy assistance used in the instant cases are open-ended or limitless and that the contracts do not provide debtors an estimate of the cost of the services, nor does it set a limit or cap on the amount for attorney's fees.

Lastly, the Trustee argues that $3,000.00 flat fee authorized under P.R. LBR 2016-1(f)(l) is portrayed in the contract as a basic or minimum fee, not as a flat fee, that can be changed in the

fee agreement if changed by the Bankruptcy Court. The Trustee argues that this a misrepresentation to the Debtors and that a change in the local bankruptcy rule setting the amount of the flat fee authorized in Chapter 13 cases cannot have the effect of changing or modifying the fee agreement established in the contract for bankruptcy assistance.

The Trustee's Arguments Related to the Use of Paralegals

The Trustee's argument as to the use of paralegal is exclusive to case no. 16-00699. The Trustee argues that the contract in the section entitled "Information on Use of Paralegals Legal Partners PSC Offices" delegates in the paralegals the task of answering questions to the Debtors. The contract states the following, as translated by the Trustee:

> "Beware that it is illegal for a paralegal or other non-attorney professional, to offer "Legal Advise". By this we mean advise by a paralegal meant to exercise independent legal judgment. For this reason, all paralegal in our office are trained and advice to refer to lawyers all questions that require independent legal judgment. Fortunately, it is not illegal for a paralegal, working under the direct supervision of a lawyer to repeat for the benefit of the client, tried and tested answers that have been taught by attorneys. Because these answers have been formulated by one of our attorneys, they are a repetition by our staff, which does not mean they make an independent judgment on this regard, paralegals merely act as an extension or voice of the attorney supervising them.

> We encourage you to first address any questions you may have to a paralegal. Usually this is the fastest and most efficient way to get the answer[] you need If the paralegal or staff cannot answer your question or concern, it is the responsibility of that person to get someone who can, be it an attorney or a paralegal with more experience. Let us say that as needs arise, an attorney will be available in person or by telephone to address your concerns you can be sure that your case will be supervised by an attorney throughout the process and all final documentation will be reviewed by an attorney before being filed with the court. In addition, an attorney will always be present to represent you in all hearings or official business in court."

The Trustee argues that this language is the type of delegation proscribed by this court in In Re Pereira Santiago, 457 B.R. 172 (Bankr. D.P.R. 2011) because the paralegal is entitled to

9

decide whether a question should be referred to an attorney and, therefore, the paralegal is indeed, making a legal judgment.

<u>The Debt Relief Agency's Position</u>

The debt relief agency ("DRA") argues that the provisions of "…sections 526, 527 and 528 should be reserved for instances in which remedies are needed against an attorney for failing their clients, and not as a Trustee's sword to attack Debtors' attorneys". The DRA first argues that the Local Bankruptcy Form-G: Chapter 13 plan adopted by the Puerto Rico Bankruptcy Court through Local Bankruptcy Rule 3015-2, effective on December 1, 2017 (See GO 17-08 issued on November 14th, 2017), implemented its proposition of filing the Application for Compensation within fourteen (14) days. Furthermore, the DRA alleges that the Trustee is using a "shotgun pleading" and that all of the allegations related to "costs" should be disregarded by the court, considering that section 528 states nothing about costs but actually references fees or charges. The DRA further contends that the Trustee's arguments are focused on Attorney Suarez Cobo personally, however, the Debtor contracted with Legal Partners, which is the debt relief agency in these cases.

The DRA states that the Trustee has no right of action to pursue remedies for alleged violations of 11 U.S.C. §§526, 527 and 528. Legal Partners clarifies that the argument is not that the Trustee does not have standing but that he has no right to initiate and/or pursue remedies in 11 U.S.C. §§526-528 as he has no legal authority to do so. "Only the Court, the Debtor, and/or the assisted person, the U.S. Trustee, the Secretary of the Puerto Rico Department of Justice or his designated official or agent have the right to initiate and pursue the specific and different remedies provided by the statu[t]e." Furthermore, the DRA alleges that "…11 U.S.C. §526(c)(1) grants unchallenged power to the assisted person to validate and enforce the contract even when it has

10

been declared void." The DRA further states that there is no justiciable controversy as there is no claimant, no injury and no controversy as to the contract. Legal Partners argues:

> "In Parker v. Motors Liquidation Co. (In Re Motors Liquidation Co.), 430 B.R. 65, 92 (S.D.N.Y 2010) the court explained that even "[S]ection 1109(b) of the Bankruptcy Code does not satisfy or replace the constitutional and prudential limitations on standing. Rather, a party must establish both." Clearly, 1302(b) which has a more limited scope than 1109(b) cannot be used to catapult the Trustee over the constitutional and prudential limitations of standing, nor §323 can provide a carte blanche for the Trustee to ignore the statutory limitations of §§526-528."

> Article III limits federal judicial power to "cases" and "controversies", U.S. Const. art. III, § 2. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). To satisfy Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, 2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision". Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1042 (9th Cir. 2017).

> The Trustee will never meet the Prudential and Constitutional Standing requirements, because there is no controversy, there is no injury, the assisted person is not represented by the Trustee, and the assisted person is enforcing the terms of the contract. There is no case, there is no controversy, there is no injury. The only way around the case and controversy limitation, which would be invalid per se, is for the Trustee to be requesting a consultive opinion from this Honorable Court."

Furthermore, the DRA submits a declaration under penalty of perjury by the Debtors which states that the attorneys explained sections 526, 527 and 528. In the declarations, the Debtors attest that they understood that the attorney's fees would be charged by the time incurred and not a flat fee method, contrary to the Trustee's unsupported arguments. Additionally, the Debtors exercised their right to enforce the terms of the service contract, even if the court were to rule that the service contract is void or voidable. It is clear that the Debtor is not asking for the Trustee to seek remedies under §§526-528.

As to the specificity of the contract the DRA argues that "[i]t is our position, and we submit that it would be an invitation to mislead a prospective debtor, to even suggest that an attorney should provide specific legal bankruptcy counseling and delineate specific services that will be provided, prior to performing a meaningful investigation and due diligence process under the

circumstances of the case." "We submit, that when bankruptcy assistance is sought by a prospective debtor, there is no certainty that a petition will be filed, and if filed, there is no certainty as to which Chapter to file under, making 2016-1(f)(2) misleading in particular to prospective debtors that ultimately file under chapter 7."

Legal Partners further states that the references made to LBR 2016-1(f)(1) in the contract are "an explanation of the rule", however, the contract is clearly based in hourly billing and not ambiguous. The DRA additionally states that the "…United States Trustee's Guidelines for Reviewing Application for Compensation and Reimbursement of Expenses filed under 11 U.S.C. §330 (Appendix A to 28 C.F.R. §58) permits that change in hourly fees during the pendency of a case". As to the argument of "combining no look fee and hourly billing" the DRA states that the arguments are hypothetical in these cases as they are billed by the hour. "The mention of Local Bankruptcy Rule 2016-1(f) in the contract is only an attempt to explain how Local Bankruptcy Rule 2016-1(f) works and how the Court may allow compensation without a detailed fee petition. Even if our explanation is simply wrong, arguendo, is only an incorrect explanation of local Bankruptcy Rule 2016-1(f) and in no way affects the contract or the Court's authority to allow compensation without a detailed fee application. The Court is not bound by an explanation on how Bankruptcy Rule 2016-1(f) works, and the Trustee cannot overcome that fact." The DRA further states that "…even within the legal community and proponents of the establishment of presumptively reasonable fees, such as P.R. LBR 2016-1(f), it is argued to support its legality, with bold supplied, that it is "practical and consistent with §330 **as long as there are procedures detailed in advance where an attorney can apply for additional compensation when the services provided exceed the basic services contemplated by the "no look" or standard fee".** Stan Bersntein, Maureeen A. Tigue, Henry ZJ. Sommer & Alan N. Resnick, Collier Compensation, Employment and Appointment of Trustees and Professionals in Bankruptcy Cases, ¶3.05[4]

(2009)." "By providing an hourly billing fee, we are following bankruptcy law and complying with P.R. LBR 2016-1(a). By explaining how the Court may allow the presumptively reasonable compensation or the "flat fee" of P.R. LBR 2016-1(f)(1), we are also complying with P.R. LBR 2016-1(f)(2)(D)."

The DRA further submits that "…it is our reading and understanding that P.R. LBR 2016-1(f) applies only at the discretion of the Court. Please note that P.R. LBR 2016-1(f)(1) uses the phrase "The court may approve…" suggesting that it is not mandatory for the Court to accept the presumptively reasonable fee amount. This reading is also consistent with power and jurisdiction of the Court to review all professional fees. In addition, the cited local rule does not provide who and when, other than the court at its discretion, can elect to be compensated under the presumptively reasonable fee."

Legal Partners additionally argues against the Trustee's proposal of a "fee cap" and states that if such a proposition was applied "debtor's attorneys would have the ultimately roll over and comply with any and all Trustee's requests, even if th[][ese] requests are not required by applicable law. In other words, the Chapter 13 Trustee could work debtors' attorneys into compliance, as they would be unable to exceed the "fee cap" created by the good faith estimate provided." "Debtors' attorneys have no control over what a creditor or a Trustee may argue in a case." The DRA alleges that only a submissive approach in legal representation will allow the Debtor's attorney to maintain the legal representation under the cap, in the detriment of the Debtor.

As to the "use of paralegal" allegations, Legal Partners states that the arguments are hypothetical and not supported by any facts and therefore, will not engage in any explanation as to suppositions as to how the paralegals work or perform their duties.

<u>Applicable Law and Analysis</u>

13

This court extensively discussed the matters related to the services contracts in In Re Rodriguez Pérez, No. 15-06593 (ESL), 2018 Bankr. LEXIS 2245 (Bankr. D.P.R. July 31, 2018). The *Opinion and Order* explained in detail the requirements that a debt relief agency must meet to comply with sections 526-528 and established that the Trustee had standing to challenge the validity of the service contracts. The Chapter 13 Trustee, Alejandro Oliveras Rivera, filed similar arguments in different cases which led to the disclosure of services contracts and the court's evaluation of their compliance. However, the court notices that in these particular cases the attorneys' asseverations may have spun to more personal arguments rather than legal, provoking a series of allegations and reactions which may have distorted the legal controversies. The court exercises a cautious yet balanced approach between the importance of the Trustee's role in the chapter 13 bankruptcy administration and the adequate and zealous representation of the debtors provided by debt relief agencies.

Additionally, the court states that since these sort of claims commenced, many of the procedural issues and legal concerns have been addressed by the court as follows: PR LBR 3015-3, made effective on June 19, 2018 by General Order 18-01; the local chapter 13 plan form (LBG-G) adopted on November 14, 2017 by General Order 17-08; the chapter 13 confirmation order being currently entered by this bankruptcy judge; and the administrative order (Administrative Order 18-01) entered on December 3, 2018 for cases assigned to this bankruptcy judge. Furthermore, Local Bankruptcy Rule 2016-1(f) has been amended and an adjustment to the no look fee was adopted by the court on June 1, 2019 (See GO 19-01). The court is conscious that this decision may be an anachronism due to its lateness and the current practice by the DRA before this court on the subject matter, but the issue must be addressed, albeit late.

The court delimits the legal controversies and focuses in two principal matters: (1) does the contracts explain clearly and conspicuously the services to be provided as required by section

14

528; and (2) does the service contracts explain clearly and conspicuously the fees for the services? The court will not entertain the arguments related to paralegal work, as they are hypothetical in nature and the plain language of the contract in case no. 16-00699 cannot lead the court to conclude that unwarranted delegations to paralegal staff were made by the firm. Furthermore, the Trustee extensively argues as to the use of the no look fee as a "minimum fee" or "base fee" in the contracts. Yet, the services contracts in the present cases, although confusingly referencing Local Bankruptcy Rule 2016-1(f) in some paragraphs, charge fees by an hourly rate and under the loadstar method as explained by Legal Partners. However, similarly to the service contract in In Re Santiago Perez, the Legal Partner's contracts fail to describe the legal services to be provided. As a consequence of said failure the contracts fail to describe clearly and conspicuously the fees to be charged.

The purpose of incorporating the provisions in 11 U.S.C. §§526-528 was to require debt relief agencies to disclose specific information about the bankruptcy process to consumer debtors, whose frequent ignorance and confusion could subject them to easy deception. Conn. Bar Ass'n v. United States, 620 F. 3d 81, 95 (2nd Cir. 2010). Sections 526-528 govern the relationship between "debt relief agencies" and "assisted persons", by regulating the manner in which bankruptcy attorneys provide services to their clients. Hersh v. United States, 553 F.3d 743, 747 (5th Cir. 2008).

A debt relief agency must execute a written contract with the assisted person, not later than five (5) business days after the date on which it first provided bankruptcy assistance to the assisted person, that clearly and conspicuously explains the services that the debt relief agency will provide to the assisted person, the fees or charges for such services, and the terms of payment. 11 U.S.C. §528(a). A fully executed and completed contract must be signed by all the parties. In Re Seare, 493 B.R. 158 (Bank. D. Nevada 2013) aff'd, 515 B.R. 599 (B.A.P. 9th Cir. 2014). The debt relief

agency must provide the assisted person with a copy of the fully executed and completed contract. 11 U.S.C. §528(a)(2).

As stated by this court in In Re Pereira Santiago, 457 B.R. 172 (Bankr. D.P.R. 2011) section 528 of the Bankruptcy Code imposes several duties on debt relief agencies with respect to retainer agreements. Section 528(a) provides that a debt relief agency shall provide an assisted person a written contract within five days after the first date any bankruptcy assistance services are provided and prior to the filing of the petition. The written contract must explain clearly and conspicuously the services to be provided and the fees or charges for such services. Allan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy, ¶ 528.01 (16th ed. 2010). Since the contract must describe the services to be provided and fees to be charged, and must be provided prior to the filing of the petition, it follows that the contracting parties (attorney and prospective debtor) must meet and agree to the terms of the contract prior to the filing of the petition.

The provisions in § 528 concerning retainer agreements are statutory. As such, they are mandatory, albeit complimentary to any contractual or ethical obligation. The attorney-client relationship is consensual as it arises by reason of an agreement between the parties, and is governed by the law of contracts. However, the relationship between an attorney and a client is fiduciary in nature and based on trust, confidence and good faith. 23 Willinst on Contracts § 62:1 (4th ed.). The attorney and client relationship in Puerto Rico is a *sui generis* nature and is inextricably related to the canons of professional ethics. Dominguez Wolff v. Badillo Rivera, 2006 PR App. LEXIS 1581, 2006 WL 2385434, (P.R. Ct. App. June 28, 2006). The court notes that retainer agreements in bankruptcy must comply with section 528, are held to a higher standard than conventional contracts, and are subject to applicable codes of professional responsibility.

16

The contracts[1] for bankruptcy assistance executed between the Debtors and Legal Partners prior to the filing of the bankruptcy petition do not comply with the material requirements of §528(a). The contracts do not clearly and conspicuously explain the services to be provided. Although Legal Partners provides the declaration of both Debtors stating that they understood the legal services the firm was going to provide, the contracts forgo the statutory requirements in §528 of clearly and conspicuously explaining such services in the written manner. Legal Partners argues that it is not possible to delimit the services to be provided before the "due diligence process", however the Bankruptcy Code requires the debt relief agency to do so, and therefore the debt relief agency must execute a contract compliant with these requirements. The present contracts contain several instructions as to what is required from the debtor and several other provisions related to attorney's compensation and how the firm is going to charge and collect the fees. However, the contracts make no reference to the specific services that will be performed by the debt relief agency, as required by 528(a)(1)(A). This is critical in a case intended to be charged by hourly rates, as the assisted person is unable to understand how much will he or she end up paying for attorney's fees, and enters into a contractual relationship with no clear and conspicuous explanation as to the services required to her specific case and an estimated amount of what the services may cost. The court will not make assumptions as to the degree of explanations and services that the debt relief agency should provide. However, the court cannot agree with Legal Partners proposition that it cannot delimit any of the services without due diligence or that some diligence cannot be performed during the initial meetings with the assisted persons.

The high standard of §528(a) has been interpreted as encompassing the duty to explain with clarity in the written contract the services to be provided and the fees or charges for such

---

[1] The contracts were filed by Legal Partners at Dockets No. 45 and translation at Docket No. 49 in case no. 15-09749; and at Docket No. 55 and translation at Docket No. 60 in case no. 16-00699.

services. In the case <u>In re Robinson</u>, 368 B.R. 492 (Bankr. E.D. VA 2007), the bankruptcy court held as follows:

> "In this case, the law firm provided the debtor a written contract at the time of the first office conference. However, the agreement, although comprehensive and detailed, could hardly be characterized as clear. In terms of formatting, it consists of a single, visually-dense, small-type, 902–word paragraph covering a number of issues which are not addressed in any organized or logical manner. It is true that a careful reader, upon reading the entire document, would probably come to understand that the $3,000 fee so prominently set forth at the top of the document is effectively a minimum fee for the case. But it is doubtful that a consumer debtor who has never been through the bankruptcy process and is not a sophisticated purchaser of legal services would have any real understanding, even after reading the contract, just how much actually is covered by the retainer. Put another way, since a consumer debtor does not know what services are likely to be needed, such a consumer would have no way of knowing whether the stated exclusions are likely to apply, and what the chances are of receiving a bill that (as here) vastly exceeds the retainer.
> …
> …
> Clearly, competing interests are at stake. Good attorneys should be fairly compensated for work that benefits the client—otherwise they will not remain in business for long. At the same time, clients are entitled to a clear statement of the fee arrangement and the services to be provided. The attorney is the one who is knowledgeable about legal fees and the services likely to be required; the client typically is not. "Plain English" contracts may not be easy to draft, but Congress obviously expected attorneys representing consumer debtors in bankruptcy to provide as much clarity as possible. § 528(a)(1), Bankruptcy Code…." <u>In re Robinson</u>, 368 B.R. 492, 501-502, (Bankr. E.D. Va. 2007).

A key component of Section 528 is that the written contract "explains clearly and conspicuously" the services to be rendered, the fees and terms of payments. The requirement of §528(a)(1)(B) must be analyzed together with the written notice required under §527(b), which requires that a debt relief agency must provide to an assisted person a written notice that, in part, informs as follows: "THE LAW REQUIRES AN ATTORNEY OR BANKRUPTCY PETITION PREPARER TO GIVE YOU A WRITTEN CONTRACT SPECIFYING WHAT THE ATTORNEY OR BANKRUPTCY PETITION PREPARER WILL DO FOR YOU AND HOW MUCH IT WILL COST. Ask to see the contract before you hire anyone." The protections

18

imbedded in §§527(b) and 528(a)(1)(B) create a right for the assisted persons to be informed in a written contract of how much the services of the debt relief agency will cost.

Furthermore, the service contracts fail to comply with §528(a)(1)(B), by not clearly and conspicuously explaining "the fees or charges for such services". The logical outcome of not clearly and conspicuously explaining the services to be provided is the debt relief agency's inability to clearly and conspicuously explain how much such services may cost. A contract with an assisted person must clearly and conspicuously explain the services that the debt relief agency will provide and the fees or charges for such services. Only then an assisted person can understand how much the services to be provided may cost. The debt relief agency is not required to ascertain a specific amount to be charged when billing by the hour, but must be able to offer the assisted person a reasonable estimated amount, after an evaluation of his or her specific needs and goals. Stating in the contract that the services will be charged by an hourly rate explains the methodology that will be used to charge for the services but does not inform the assisted person how much the services may cost. To comply with its statutory responsibilities, a debt relief agency that chooses to charge by the hour must provide a realistic estimate of the cost of the services, by evaluating the services needed or expected by the assisted person and the time likely to be required to provide them. The court is aware that some cases may require additional work not foreseeable at the moment of contracting or filing. Therefore, although not serving as a cap, an estimated amount of fees should be provided to the assisted person.

Consequently, the court finds that Legal Partners failed to comply with the requirements of §528(a)(1)(A) and §528(a)(1)(B). The consequence of a contract executed between an assisted person and a debt relief agency that does not comply with the material requirements of §528(a) is its nullity and unenforceability. 11 U.S.C. 526(c)(1). Section 526(c)(1) specifically deals with the contract, and whether the terms and conditions of the contract comply or do not comply with the

"material" requirements of §§526-528. If a contract itself fails to comply with the statutory requirements, the contract is void and unenforceable pursuant to §526(c)(1). The court in In Re Humphries explains:

> "The written fee agreement required by section 528(a)(1) must contain a clear explanation of "(A) the services such agency will provide to such assisted person; and (B) the fees or charges for such services, and the terms of payments[.]" Id. §528(a)(1). A written fee agreement may not contain: any waivers of rights afforded the debtor as against debt relief agencies, 11 U.S.C. 526(b); false statements, id. §526(a)(2); or misrepresentations of services to be provided or benefits available under the Bankruptcy Code, id. §526(a)(3). B.O.C. Law Grp., P.C. v. Carroll (In re Humphries), 453 B.R. 261, 263 (E.D. Mich. 2011)

Such explanations need to be clear and conspicuous. The Legal Partner contracts fails to clearly and conspicuously explain the services that the agency will provide and the fees for such services. The court finds that the failure is material, and, consequently, the court finds that the contracts signed with the Debtors are void. Therefore, the Court is unable to enforce it, pursuant to 526(c)(1).

Debtors' Statements to Enforce the Contract

The declarations under penalty of perjury included in Legal Partners replies state the following: "I know that a contract for legal representation, such as the one signed with Legal Partners PSC, which does not comply with the material requirements imposed by sections 526[,] 527 and 528 of the Bankruptcy Code is void and that no one can enforce and/or assert its compliance, except for I. In accordance with section 526(c)(1) of the Bankruptcy Code I request and enforce the fulfillment of the contract, in case the same is void, with Legal Partners, P.S.C. previously described, including for the award of attorney's fees requested by Legal Partners, PSC previously authorized by me."

Legal Partners argues that the Debtors have the right under 11 U.S.C. §526(c)(1) to enforce the contract as amended, including its terms of payment, even if the contract is void. This argument

20

misconstrues the scope of §526(c)(1) and ignores the protections afforded to assisted persons in §526(b). Section 526(b) provides as follows: "Any waiver by an assisted person of any protection or right provided under this section shall not be enforceable against the debtor by any Federal or State court or any other person but may be enforced against a debt relief agency." By arguing that the Debtor wishes to enforce the contract as amended, including its terms of payment, Legal Partners is advocating for a waiver to the Debtor's right of not being obligated by a court to pay for the services of the debt relief agency if the contract is void. This type of waiver is unenforceable under §526(b). Moreover, §526(c)(1) has been interpreted "as preventing an attorney who fails to comply with the requirements of 11 U.S.C. §§ 526, 527, or 528 from obtaining a court order compelling the debtor to pay additional attorneys' fees otherwise be due and owing." In re Gutierrez, 356 B.R. 496, 505 (Bankr. N.D. Cal. 2006). Accordingly, the debtor's statement to enforce the contract does not liberate the debt relief agency of the legal consequences of rendering the contract void.

## Conclusion

In view of the foregoing, the Court finds the contracts for bankruptcy assistance executed between the Debtors and Legal Partners, PSC are void for failure to comply with the material requirements of 11 U.S.C. §528. The Court concludes that the law firm has forfeited the right to charge for the services provided in these cases. Therefore, the applications for compensation filed by Legal Partners are denied. Furthermore, the court orders the debt relief agency to return to the Debtors all the legal fees paid prior to the filing of the bankruptcy petition.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of April, 2020.

Enrique S. Lamoutte
United States Bankruptcy Judge

21